INTERNATIONAL UNION OF UNITED BREWERY, FLOUR, CEREAL AND SOFT DRINK WORKERS OF AMERICA et al. v. CALIFORNIA STATE BREWERS' INSTITUTE et al.

No. 1197–J.

District Court, S. D. California. Central Division.

Feb. 23, 1938.

Saul S. Klein, of Los Angeles, Cal., and P. H. McCarthy, Jr., and W. H. Metson, both of San Francisco, Cal., for plaintiffs.

Vanderveer & Bassett and George F. Vanderveer, all of Seattle, Wash., and Otto Christensen, of Los Angeles, Cal., for defendants Teamsters' Union and others.

Brobeck, Phleger & Harrison, Gregory A. Harrison, and E. R. Hoerchner, all of San Francisco, Cal., for defendants California State Brewers' Institute and others.

Livingston & Livingston, of San Francisco, Cal., for defendant Humboldt Malt & Brewing Co.

John J. Wilson, of Los Angeles, Cal., for defendant Aztec Brewing Co.

Hanna & Morton, of Los Angeles, Cal., for defendants Southern California Brewers' Ass'n and others.

JAMES, District Judge.

This action was brought by the plaintiffs to secure injunctive relief against the California State Brewers' Institute, a corporation et al., member brewers, and International Brotherhood of Teamsters, Chauffeurs, Stablemen and Helpers, an unincorporated association. The facts as alleged in the complaint were treated of in a written opinion heretofore filed embodying a ruling on the motion of plaintiffs to strike portions of the answer, and the whole of the cross-complaint of defendant International Brotherhood of Teamsters, Chauffeurs, Stablemen and Helpers. It will be unnecessary here to restate the issues proposed by such pleadings. The defendant Brotherhood of Teamsters, etc., in its cross-complaint set up that the American Federation of Labor had decreed that local teamsters attached to the brewery organizations forming the State Brewers Institute should affiliate with the Teamsters Brotherhood; and that as both organizations, to-wit, International Union of United Brewery, Flour, Cereal and Soft Drink Workers of America and said International Brother of Teamsters, Chauffeurs, Stablemen and Helpers, were members of the American Federation of Labor, the teamsters so attached to the brewery organizations were compelled to obey the mandate of the American Federation of Labor. This mandate had at all times been repudiated by the union of brewery workers. The latter organization included a joint association, the brewers of beer, bottlers and the local deliverymen. They had always acted in unison and dealt with their employers harmoniously. In fact the evidence shows that there had been, with respect to wages, hours or other incident conditions of employment of the brewery workers, no conflict whatsoever as against the brewery owners in the regards stated; they are all satisfied. At a period several years distant in the past the independence of the brewery workers' union (including local teamsters) had been acknowledged by the American Federation of Labor. At one time, also several years in the past, a written agreement was made between the brewery workers and the Brotherhood of Teamsters, which on the part of the teamsters acknowledged the independence of the brewery workers, including local delivery men, making certain exceptions which are not here involved and which had no connection with the operation of the manufacture or delivery of beer. Notwithstanding all this, the matter was again presented to the executive council of the American Federation of Labor, which formulated a report recommending the separation of the brewery teamsters or delivery men from the brewery workers' union, and the attaching thereof to the Brotherhood of Teamsters. This report was approved by the convention of the American Federation of Labor. As before stated, the brewery workers' union refused to accept that mandate and have consistently ever since resisted the dismembering of the three component crafts which made up their union organization. With this condition of internal union dissension, the Brotherhood of Teamsters threatened to and did inaugurate a systematic boycott against the breweries employing teamster delivery men who belonged to the union of brewery workers (there were no others). It is shown that because of this strife existing between the union forces, the brewery owners have and will continue to suffer great loss. Their products have been

boycotted by the Brotherhood of Teamsters in the West and within this jurisdiction, and in some cases violence has been offered and threatened as against local teamsters delivering the manufactured products of their employers.

The brewery owners endeavored in every way to bring the warring union factions together. Their representative visited Mr. Green, the head of the American Federation of Labor, and he (Green) earnestly attempted to adjust the dispute, all to no satisfactory end. It will be remembered that breweries have employed and still do employ none but American Federation of Labor men in their establishments; their products are marketed interstate. They have been and are willing to deal with the proper representatives of their employees, and as before stated, no disputes of any kind exist except that which has been brought on by the strife described. On first thought it is at once suggested that under the existing labor law the National Labor Board might have the jurisdiction and duty to settle the controversy. Such appears not to be the case. It is represented to the court that the Labor Board has declared that it will not take jurisdiction of the controversy. Quite apparent it is that the ruling is consistent with rulings of that body where no dispute exists as to bargaining between the employers and the workers.

The crucial question is the same as that presented on the motion of the plaintiffs to strike certain portions of the answer and to strike the cross-complaint of International Brotherhood of Teamsters. The particular portion of the cross-complaint so pointed to was that where the teamsters set up the jurisdiction and orders as made of the American Federation of Labor and asserted that the orders of that body are binding on the plaintiffs. Preferring to have the whole case presented on evidence, with entire freedom extended to all parties to offer their various conclusions as to the law and their rights under it, I denied the motion to strike, but stated: "I express no final opinion as to whether the decision of the American Federation of Labor, within or without a proper construction of its articled power over its union members, may be subject to review by the court. The question may be left for further argument and decision." A lengthy hearing resulted and evidence in great volume was introduced. Plaintiffs have insisted that they present their case

in a capacity, as alleged, representative of the voice of the workers in the breweries, separate and distinct from any rule or mandate from the American Federation of Labor; that if such is not the case, then they deny the authority of the American Federation of Labor under the articles of their association with it to make any such binding order as the one hereinbefore referred to.

There is no question, as will appear from what has already been stated, that the brewery workers are fully organized; that they perform the work of manufacturing and delivering the manufactured product of the breweries, and that they assume to be and have heretofore been recognized by the brewers as having the sole voice in the matter of all disputes arising by reason of differences as to wages, hours or working conditions.

I remarked in ruling on the motion to strike that it was unfortunate that a great labor organization such as the American Federation of Labor would not adjust disputes between its union members as to jurisdiction, etc., and I repeat that observation. That there are ways and means within that organization's power to bring this dispute to a close, I entertain no doubt.

Why, it may well be asked, if the Federation order referred to is thought to be of binding effect and is not obeyed, does not the Federation take disciplinary action, such as canceling the certificate of affiliation or charter, or whatever it may be called, which the brewery workers hold? I am decidedly not of the view that courts should attempt to interfere with the Federation in the pursuit of any lawful policy that it may undertake to carry out. It has within its own organized articles the power to make its regulations effective as to constituent members, so long as the mandate of the express law of the Government is not transgressed thereby.

■■■ We have a mandate in the labor law which gives to the workers complete right to organize and deal with their employers. Where disputes arise as to who of the employees are authorized to treat with employers as to wages, hours and other associated matters, the National Labor Relations Board is given exclusive jurisdiction to determine the same. Statutes 1935 (49 Stat. page 449), 29 U.S.C. § 151 et seq., 29 U.S.C.A. § 151 et seq. That set of laws is designed to protect the laborer and give him the right to appeal to the

Board. The employer as yet seems not to have a correlative right. The Act provides for agencies of adjustment which workers may appeal to, whether they are union men or not. One of its designs was to afford the workers the privilege of collective bargaining by representatives of their own choice, and to exclude the influence of the employer in such selection. The Supreme Court noted in National Labor Relations Board v. Jones & Laughlin Steel Corporation, 301 U.S. 1, 57 S.Ct. 615, 627, 81 L.Ed. 893, 108 A.L.R. 1352: "The provision of section 9(a) [29 U.S.C.A. § 159(a)] that representatives, for the purpose of collective bargaining, of the majority of the employees in an appropriate unit shall be the exclusive representatives of all the employees in that unit, imposes upon the respondent only the duty of conferring and negotiating with the authorized representatives of its employees for the purpose of settling a labor dispute. This provision has its analogue in section 2, Ninth, of the Railway Labor Act, as amended (45 U.S.C.A. § 152, subd. 9), which was under consideration in Virginian Railway Co. v. System Federation, No. 40, supra [300 U.S. 515, 57 S.Ct. 592, 81 L.Ed. 789]. The decree which we affirmed in that case required the railway company to treat with the representative chosen by the employees and also to refrain from entering into collective labor agreements with any one other than their true representative as ascertained in accordance with the provisions of the act. We said that the obligation to treat with the true representative was exclusive and hence imposed the negative duty to treat with no other."

Here we have a case where the business of the brewers has in a measure been destroyed and is threatened with further destruction. The brewery workers insist upon their right to maintain their unified organization and deal with their employers, and have threatened if their employers accede to demands of the Brotherhood of Teamsters to quit their jobs and strike. If that situation arose, the brewers have testified they would have to close their plants. The gravity of the situation as expressed in the evidence warrants that definition. It has been well said, the brewers have been ground between the upper and nether stones, willing all the while to cooperate as they have in the past with their employees, and with no dispute of any kind with them as to terms of employment. While the present situation as to the controversy continues, the brewery owners are helpless.

■ I have spent many hours in the study of the evidence introduced at the trial, and have examined every authority cited to me by counsel for all parties, and besides, have made an independent search for such as I could myself discover. I feel that injunctive relief must be allowed to preserve the right of the brewers to continue their business and to insure them that so long as they deal with their actual workers on matters pertaining to the employment they may be relieved from attacks such as are alleged, and are shown to have been made and threatened to be made by the Brotherhood of Teamsters.

■ The Norris-LaGuardia Act, 29 U.S.C.A. § 101 et seq., can have no application in my view, as no true labor dispute is involved—that is, any dispute between the employers and the workers. Nothing that is said or determined herein, in the smallest part, interferes with any right of the working man to the enjoyment of every privilege which the laws afford to him. Rather it is that the rulings made further the intent and purpose of all existing statutes designed to operate in the favor of the employee class.

A pertinent decision is that of United Electric Coal Companies v. Rice et al., 7 Cir., 80 F.2d 1. With general relation to the same subject is Apex Hosiery Co. v. Leader, 3 Cir., 90 F.2d 155. There are a number of other cases, all of which I have carefully examined, but as I feel sure that the law is not seriously in dispute between the parties, it would be of no service to multiply citations. I have had handed me sheet copies of two recent decisions made, one by Judge Fee of the District Court of Oregon, Water Front Employers of Portland, a corporation, et al., v. Committee for Industrial Organization,[1] and a three-judge case heard in the Western District of Missouri, entitled Donnelly Garment Co., a Corporation, et al. v. International Ladies' Garment Workers' Union, unincorporated, et al., Defendants, Donnelly Garment Workers Union, unincorporated, Intervener, D.C., 21 F.Supp. 807. These cases have to do generally or in part with the admitted right under the law to collective bargaining.

[1] No opinion for publication.

■■ I agree, as before stated, that the dispute is inter-union between Federation of Labor members, and that any such dispute must be settled through the action of that organization; moreover the Federation is not a party here; that this court is not called upon, and apparently is without jurisdiction to make any orders which would be effective as controlling against the authority of the American Federation of Labor within its own organized circles. My decision is, in effect, only that pending settlement by the Federation of Labor of its own internal disputes, the brewers, innocent of any act concerned either in the creation or existence of such disputes, are entitled to be protected against acts which are destructive of their business and property, and which create disorder and threaten the public peace. If the National Labor Relations Board can properly, and does in the future take jurisdiction of and adjust the controversies, it may be that the courts can decline to act further in the matter. Any direction that may be incorporated in the decrees to be made herein will be subject to modification. Jurisdiction will be accordingly reserved in the court, unrestrictedly to act and decree in the future as conditions may warrant under a showing of new or different facts.

■ The facts should be found agreeable to the conclusions now expressed. The ultimate position of the plaintiffs and the brewery owners is the same. Injunction should issue as against the Teamsters Brotherhood. The brewery owners I believe are entitled to a declaratory judgment, but I am not of the opinion that any injunction should issue restraining their employees from striking. In view of the decision as made it is probable that the brewery owners will not have need of any such relief—In any case, I doubt the right of the court to give it.

■ The Contempt Proceeding: It was charged that the brewers had violated the restrictive orders of the preliminary injunction issued in this case. The executive head of the Teamsters Brotherhood was also cited. I am fully satisfied, after hearing the testimony in that matter, that there was no intent to disregard the injunctive orders. An attempt was made to work out a temporary operating agreement, which failed utterly of consummation. Moreover, the representatives of the brewery workers participated in the conferences. The motion of the respondents in the contempt proceedings to dismiss that proceeding is granted.

Findings and decrees will be entered as indicated. An exception will be noted in favor of all parties affected thereby.